Filed 3/17/21  P. v. Nunez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DANIEL NUNEZ,<br><br>    Defendant and Appellant. | G058009<br><br>(Super. Ct. No. 15NF0143)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Julian W. Bailey, Judge.  Affirmed.

Cathryn L. Rosciam and Arthur Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

Daniel Nunez appeals from his conviction on one count of committing a lewd act on a child under the age of 14.  (Pen. Code, § 288 subd. (a).)   The jury also found true the allegation that he engaged in substantial sexual conduct with his victim.  (Pen. Code, § 1203.066, subd. (a)(8).)  Nunez contends the judgment must be reversed because the trial court abused its discretion by (1) admitting evidence of his prior uncharged sexual offenses under Evidence Code section 1108, and (2) preventing him from cross-examining a witness about her income in an effort to impeach her testimony.[1]

The trial court has broad discretion to determine the admissibility of evidence, and we find no error in either ruling.  We also reject Nunez's suggestion that we "reconsider" whether Evidence Code section 1108, which allows the trial court to admit evidence of prior uncharged sexual offenses, amounts to a denial of due process. As Nunez acknowledges, our Supreme Court has rejected that contention in *People v. Falsetta* (1999) 21 Cal.4th 903, 907 (*Falsetta*), and we are bound by its decision.[2]  It is not within our power to "reconsider" a ruling made by our Supreme Court.  (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[1]      In his opening brief, Nunez also contended the court erred by admitting evidence of the victim's prior disclosures of the charged crime to third parties, claiming it was inadmissible hearsay.  However, Nunez explicitly withdrew that claim of error in his reply brief.

[2]      We recognize Nunez likely raised this issue as a precursor to seeking review of the issue by our Supreme Court.  However, as the Attorney General points out, the Supreme Court has rejected challenges to its *Falsetta* ruling several times in recent years.  (See *People v. Molano* (2019) 7 Cal.5th 620, 664, citing *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 827; *People v. Loy* (2011) 52 Cal.4th 46, 60-61; *People v. Lewis* (2009) 46 Cal.4th 1255, 1288-1289.)

We consequently affirm the judgment.

## FACTS

In October 2017, Nunez was charged with a single count of lewd conduct with a minor under the age of 14. (Pen. Code, § 288, subd. (a).) It was further alleged that he engaged in substantial sexual contact with the minor. (Pen. Code, § 1203.066, subd. (a)(8).) The offense was alleged to have occurred between February 2010 and February 2013.

At the time of the offense, Nunez was living with his long-term girlfriend, Gwendelyn B. The two had been living together since 1986 or 1987. Gwendelyn had three children from an earlier relationship—daughters Shannon B. and Jamaica B., and son Forrest B. Nunez had helped raise those children, who were adults by the time the offense occurred. Gwendelyn and Nunez also had a child together, Gabriel R.

Gwendelyn and Nunez lived in a mobile home that was also shared, for a period of several months, by Forrest. The mobile home was divided into two separate residences; Gwendelyn and Nunez lived in the front, while Forrest lived in the back.

The victim of the charged crime was Forrest's daughter (and Gwendelyn's granddaughter), V.D., who was an 11-year-old fifth grader at the time. V.D. lived with her mother, but sometimes visited her father at the mobile home.

During one of those visits, V.D. was in the front residence of the mobile home, sitting on the bed in the room shared by Nunez and Gwendelyn. She was playing with her flip phone when Nunez came into the room and sat on the bed next to her.

After asking how V.D. was doing, Nunez pulled her closer to him, touched her thigh, and rubbed her vaginal area outside of her pants. He unbuttoned her pants and pulled down both her pants and underwear. Nunez then rubbed the outside of her vagina and put his finger inside. He asked V.D. if she liked it, and she told him she did not and that it hurt.

3

Nunez warned V.D. not to tell anyone; in response, she shook her head apparently to signify she would not. She then ran into her father's residence, hid in the closet, and cried. She did not tell her father what occurred, but she avoided being alone with Nunez after that day.

At some point, V.D. stopped visiting her father at the mobile home; when he asked her why she did not want to stay with him, she told Forest she was not comfortable around Nunez and Gwendelyn.

V.D. did not tell anyone what Nunez had done to her for two or three years. However, in the period spanning eighth grade to tenth grade, she revealed that Nunez had molested her to four different friends. All four of those friends testified at the trial.

In September 2014, when V.D. was in ninth grade, she told her mother she had been molested, but she would not initially reveal the identity of the perpetrator. After consistent prodding from her mother over the course of a month, she finally revealed it was Nunez.

V.D.'s mother contacted V.D.'s aunt, Jamaica, who came to talk to V.D. The next day, Jamaica and V.D.'s mother took V.D. to the police station to report the crime. At the police station, Jamaica also reported Nunez had molested her repeatedly when she was between the ages of about eight and twelve years old.

The police then spoke with Jamaica's sister, Shannon, who reported Nunez also molested her several times when she was between the ages of eight and eleven.

At trial, the prosecution filed a motion to admit evidence of Nunez's prior uncharged sexual misconduct against Jamaica and Shannon under Evidence Code section 1108. The prosecution proffered that Jamaica and Shannon would testify Nunez had molested each of them repeatedly over a period of years in the 1980's—beginning when they were around the ages of eight or nine—by digitally penetrating their vaginas and touching their breasts and buttocks.

4

The prosecutor argued that the evidence of both witnesses was relevant to the jury's evaluation of V.D.'s credibility in this case, as well as to the issues of Nunez's intent and the absence of mistake or accident. The prosecution also asserted that the evidence should not be excluded under Evidence Code section 352 because its probative value outweighed its prejudicial effect.

During the in limine hearing, the prosecutor explained that after Jamaica and Shannon disclosed the molestations to Gwendelyn, Nunez apologized at a family meeting, and the matter was not reported to law enforcement.

Although Nunez argued the evidence should be excluded because it was too prejudicial and too remote, the court found that the similar ages of V.D. and her aunts at the time they were molested, as well as the similar familial relationship between Nunez and each of the victims, had "significant probative value." The court consequently concluded that the probative value of the evidence outweighed the danger of the jury misusing it and ruled it was admissible under Evidence Code section 1108. The trial court further noted that the jury would be appropriately instructed as to how to evaluate the evidence.

Both Shannon and Jamaica testified at trial about Nunez's molestation history. They also revealed that after they finally disclosed to a cousin the fact Nunez was molesting them, Gwendelyn learned of it and called them together with Nunez to address the issue. Jamaica recalled going into a bedroom where Nunez was present on his knees. Gwendelyn asked the two girls if Nunez had done anything to them, and they said "yes." Nunez was crying and said he was "sorry." Gwendelyn asked the girls to forgive him. Shannon recalled she and her sister participated in a larger family meeting that included their aunt, two cousins, and Forrest. Shannon testified the outcome of the meeting was that Nunez apologized and said it would not happen again. They did not report the molestation to the police.

5

Nunez's defense was grounded on a theory that V.D. had fabricated the allegation against Nunez—allegedly at the behest of Jamaica, who wanted Nunez out of the way so she and her five children could move into the mobile home with Gwendelyn. During Jamaica's cross-examination, defense counsel asked her if she worked. When she responded, "no," counsel asked her how she supported her five children.

After the court sustained a relevance objection to that question, counsel explained during a sidebar that "the defense is that these people are making this up. They want Daniel Nunez out of the picture so they can live at his place, and I want to know how she supports her five children. I think it's relevant because it would show a motive to fabricate." The court then allowed Nunez's counsel to question Jamaica outside the presence of the jury, to establish how she would have answered.

Jamaica testified that she supported her children through a combination of child support payments and government housing assistance. In response to follow up questions, she explained that "housing assistance" meant "[t]he government helps me pay for my rent." She gave the ages of her children, who were between 4 and 20, and clarified that she received two child support payments from different people. After receiving those answers, defense counsel stated those were the questions he would ask in front of the jury; the court once again sustained the prosecutor's objection and ruled the evidence irrelevant.

The prosecutor asked Jamaica on redirect if she had fabricated her claim of sexual assault because she was trying to live in a house Nunez owns; Jamaica answered "[n]o."

After both sides had completed their presentation of evidence, the court turned to the issue of jury instructions. The trial court proposed, without objection, that the jury be instructed it could evaluate the evidence of Nunez's prior uncharged sexual misconduct involving Jamaica and Shannon for its tendency to show intent, absence of mistake or accident, or common plan under Evidence Code section 1101, subdivision (b),

6

as well as for its tendency to show Nunez's disposition to commit sexual offenses under Evidence Code section 1108.

The trial court subsequently instructed the jury under a modified version of CALCRIM No. 375, Evidence of Uncharged Offenses, which directed the jurors to disregard the evidence entirely if they concluded the prosecutor failed to establish by a preponderance of the evidence that the prior molestation occurred.

However, the instruction also informed the jurors that if they "decide[d] that the defendant committed the offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] The defendant acted with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the defendant or [V.D.]; or [¶] The defendant's alleged actions were not the result of mistake or accident; or [¶] The defendant had a plan or scheme to commit the offense alleged in this case; or [¶] The defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the offense charged here. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offense."

The instruction explicitly directed the jury "not [to] consider this evidence for any other purpose except for these limited purposes. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged crime or the allegation that the defendant had substantial sexual conduct with [V.D.] who was under the age of 14 at the time. The People must still prove the charge and every allegation beyond a reasonable doubt."

The prosecutor included the instruction's language in her closing argument, and told the jurors that they were not permitted to use the prior act evidence to find the defendant was "automatically guilty of sexually assaulting [V.D.] . . . ."

7

**DISCUSSION**

1.    *Standard of Review*

In seeking a reversal of his conviction, Nunez relies on a claim that the court abused its discretion in two evidentiary rulings. We observe at the outset of our analysis it is difficult to prevail on that argument. "'In determining the admissibility of evidence, the trial court has broad discretion. . . . A trial court's ruling on admissibility implies whatever finding of fact is prerequisite thereto . . . .' [Citation.] 'We review the trial court's conclusions regarding foundational facts for substantial evidence. [Citation.] We review the trial court's ultimate ruling for an abuse of discretion [citations], reversing only if "'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'"'" (*People v. Jackson* (2016) 1 Cal.5th 269, 320-321.)

2.    *Admission of Evidence of Prior Uncharged Sex Offenses*

Nunez's first contention is that the court abused its discretion by admitting the evidence of his earlier uncharged sex offenses involving Jamaica and Shannon. He argues the evidence should have been excluded under Evidence Code section 352 because it was substantially more prejudicial than probative.

"In sexual offense cases, Evidence Code section 1108 creates an exception to Evidence Code section 1101's prohibition against propensity evidence. Under Evidence Code section 1108, when a criminal defendant is accused of a sexual offense, 'evidence of the defendant's commission of another sexual offense or offenses' is not excluded under section 1101 if not inadmissible under Evidence Code section 352. [Citation.] For purposes of Evidence Code section 1108, 'sexual offense' includes sexual assault, lewd acts on a minor, unlawful intercourse with a minor, rape by coercion, forcible rape, production of child pornography, and exhibiting pornography to a minor." (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1115, fn. omitted (*Nguyen*).)

8

Evidence Code section 352 provides the court with discretion to '"exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) *necessitate undue consumption of time* or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."'  However, "The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." (*Falsetta, supra*, 21 Cal.4th at p. 916.)

In exercising their discretion to admit evidence of prior sexual offenses, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra*, 21 Cal.4th at p. 917.)

In *Nguyen*, this court characterized the most significant considerations as "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time." (*Nguyen, supra*, 184 Cal.App.4th at p. 1117.)

9

Keeping those factors in mind, we find no abuse of discretion in the court's decision to admit the evidence of Nunez's prior uncharged offenses against Jamaica and Shannon. The only factor of the five listed in *Nguyen* that might militate against admission is that the prior acts are fairly remote in time. But as the Attorney General points out, similar periods between prior acts of sexual misconduct and the current crime were countenanced in *People v. Robinson* (2012) 208 Cal.App.4th 965, 992 [34 years]; *People v. Branch* (2001) 91 Cal.App.4th 274, 284 [30 years]; and *People v. Pierce* (2002) 104 Cal.App.4th 893, 900 [23 years].

Moreover, as pointed out in *People v. Pierce, supra*, 104 Cal.App.4th at p. 900, "'substantial similarities between the prior and the charged offenses balance out the remoteness of the prior offenses.'" And as Nunez concedes, the circumstances of the prior uncharged sexual offenses were strikingly similar to the one alleged in this case. Hence, rather than attacking the probative value of the evidence, Nunez leans heavily on the other factors to support his contention that the evidence was substantially more prejudicial than it was probative.

Nunez also contends the evidence of those offenses was stronger and more inflammatory than the evidence supporting the current charge because it involved multiple victims and a pattern of incidents over time. Our analysis of the issue differs. Both the current crime and the prior offenses were supported by the same type of evidence: direct victim testimony. To us, that evidence seems stronger in the current case as it is less attenuated. And because the crimes described by all three victims were so similar, we view them as equally inflammatory. It is unlikely any juror would have concluded that while a single incident of the type described by V.D. was excusable, the same conduct committed repeatedly—as described by Jamaica and Shannon—should be punished.

Nunez also argues the evidence related to prior offenses was likely to have confused and distracted the jury because he was never punished for those offenses and

10

the jury might have decided to convict him on the charge against V.D. as a means of holding him accountable for those earlier crimes. However, there is no evidence to support such speculation. To the contrary, the court's instruction to the jury gave clear directions about the limited use it could make of the prior offense evidence, and stated unequivocally that even if the jury concluded that Nunez had committed those prior offenses, that finding could not be the sole basis for convicting him on the current charge. We must presume the jury followed those instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 662.)

Finally, Nunez also claims the evidence of the prior offenses required an undue consumption of time; again we cannot agree. The evidence consisted almost entirely of direct testimony from Jamaica and Shannon, including cross-examination of both witnesses. There was little third party testimony about the prior offenses:[3] no circumstantial evidence, no experts, and no scientific evidence.

Based on the foregoing, we find no abuse of discretion in the court's determination that the evidence of Nunez's prior sex offenses was not unduly prejudicial.

3. *Limitation on Cross-Examination of Jamaica*

Nunez also contends the court abused its discretion by "exclud[ing] this line of questioning" about Jamaica's purported difficulty "providing financially for her children." He contends this alleged error unfairly "restricted [his] counsel's ability to confront and cross-examine a key prosecution witness on an issue relevant to her bias and credibility."

---

[3] During his testimony, Forrest was asked if he knew about the "family secret where Daniel Nunez was accused of molesting your sister," and he replied that he did know about it, but did not believe it. In her testimony, Gwendelyn explained how she became aware of the fact her daughters claimed Nunez had molested them. She also described the family meeting in which he apologized for it, and revealed that he had "fled to Mexico for one or two months with his mother after the family meeting." Her direct testimony on the issue comprises only nine pages of the reporter's transcript.

11

But the argument misconstrues what actually happened, as well as its significance. As the record reflects, Nunez was not stymied on an entire "line of questioning" about "an issue relevant to [Jamaica's] bias and credibility." Instead, he sought to ask what was essentially a single question: how did Jamaica, who apparently had no paying job, support her children? Nunez's stated goal was to demonstrate that Jamaica had no means to provide for her children, and was so desperate for housing that she orchestrated a criminal conspiracy involving a false accusation of sexual abuse against him as a means of removing him from the mobile home he shared with Gwendelyn.

After the prosecutor objected to counsel's question on relevance grounds, Nunez's counsel was permitted to ask Jamaica his question outside the presence of the jury to ascertain what evidence it would reveal. After Jamaica answered the question, Nunez's counsel asked some fairly minor follow-up questions—establishing that she relied on two separate child support payments as well as government housing assistance to support her five children—before stating those were all the questions he had on the subject.

Contrary to Nunez's apparent belief, the evidence Jamaica gave in response to his questions—i.e., the evidence she presumably would have given before the jury had the court not sustained the relevance objection—did nothing to establish her bias. Indeed, in the absence of any information about the amounts of child support and housing assistance Jamaica received, it did nothing to establish she had difficulty providing financially for her children. It was, as the trial court ruled, irrelevant.

Moreover, as Nunez acknowledges, he was still able to make his larger point—which was that Jamaica desired to live in the mobile home with her children—through the testimony of Nunez's sister, who claimed that in 2015 Jamaica had broken into the back residence of the mobile home and began living there with her children while the sister was still nominally residing there. His counsel relied on that evidence in

12

closing argument to support his assertion that Jamaica had a motive to lie about Nunez to get him out of the residence. Although the jury was apparently not persuaded by that argument, we fail to see how the point would have been materially strengthened by allowing the jury to hear that Jamaica supported her children through some combination of unspecified amounts of child support and government housing assistance.

**DISPOSITION**

The judgment is affirmed.

GOETHALS, J.

WE CONCUR:

FYBEL, ACTING P. J.

THOMPSON, J.

13